UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WASHINGTON POTATO COMPANY,<br><br>     Plaintiff,<br><br> v.<br><br>J.R. SIMPLOT COMPANY,<br><br>     Defendant. | NO: 4:17-CV-5032-RMP<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR FRCP 56(D) DISCOVERY AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are pending motions regarding Plaintiff Washington

Potato Company's complaint for a declaratory judgment that its March 2017

purchase of Defendant J.R. Simplot Company's interest in Pasco Processing was

authorized by the controlling operating agreement. [1]  Having reviewed all of the

---

[1] The motions before the Court are Defendant J.R. Simplot Company's Motion for Judgment on the Pleadings, ECF No. 18; Plaintiff Washington Potato Company's Motion for Partial Summary Judgment, ECF No. 50; and Defendant Simplot's Motion for Additional Discovery, ECF No. 67.  On July 27, 2017, the Court heard oral argument from the parties in Spokane, Washington, on the Fed. R. Civ. P. Rule 12(c) motion for judgment on the pleadings.  The Court heard oral argument

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR FRCP 56(D) DISCOVERY AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

pleadings and arguments in this matter, the Court finds as a matter of law that Simplot's actions resulted in a deadlock pursuant to the operating agreement. Once the deadlock occurred, Washington Potato followed the provisions set out in the operating agreement to resolve the deadlock. After Simplot refused to participate in the process to resolve the deadlock, Washington Potato exercised its rights under the operating agreement and lawfully purchased Simplot's interest in Pasco Processing. Therefore, the Court denies Defendant's motions for judgment on the pleadings and for discovery, and grants partial summary judgment to Plaintiff.

## BACKGROUND

Most of the underlying facts in this case are undisputed. The facts that are disputed are noted in this Order.

### *The parties' business relationship and other key entities in this case*

In 2008, J.R. Simplot Company ("Simplot") and Washington Potato Company ("WPC") became fifty-percent co-owners of an industrial-scale vegetable processing company, Pasco Processing, LLC ("Pasco Processing").

---

from the parties in Richland, Washington, on Plaintiff's Fed. R. Civ. P. Rule 56 motion for summary judgment and Defendant's Fed. R. Civ. P. Rule 56(d) motion for discovery on October 11, 2017. The Court further reviewed voluminous briefing, declarations, and accompanying exhibits from the parties, including a sur-reply from Plaintiff, ECF No. 49, and response to the sur-reply, ECF No. 55, from Defendant regarding Defendant's motion for judgment on the pleadings.

Frank Tiegs acts as president and he and his wife own both WPC and Oregon Potato Company ("OPC"). Mr. Tiegs and his wife also own farming and other processing entities, some or all of which have transactions with Pasco Processing. ECF No. 63 at 72, 193. Simplot and OPC have been Pasco Processing's two primary customers. ECF No. 63 at 11.

WPC manages Pasco Processing, including scheduling usage of the plant's services, maintaining the facility's books and records, and overseeing other aspects of the business's day-to-day operation. *See* ECF No. 52 at 30, 37. WPC claims that its management of Pasco Processing "turned things around" from the performance of the plant before 2008 and "made the plant profitable." ECF Nos. 51 at 3; 53 at 2. Simplot disputes that assertion by referring the Court to the statement of Simplot's Vice President of Finance for its North American Food Group, Brent Moylan, that "[t]he consolidated annual earnings of the Pasco Group have fallen more than 60% from fiscal year 2014 through fiscal year 2016." ECF No. 63 at 138. However, Mr. Moylan acknowledged at his deposition that the plant became profitable after WPC assumed management duties in 2008. ECF No. 52-4 at 7–8.

In 2012 and 2013, Pasco Processing acquired National Frozen Foods Corporation ("NFF"),[2] and Simplot and WPC renegotiated their co-ownership of Pasco Processing by entering into an Amended and Restated Limited Liability Company Operating Agreement. The parties do not dispute that the Amended and Restated Limited Liability Company Operating Agreement, referred to in this Order as "OA," is controlling in this matter.

### Contract provisions

The OA, effective February 15, 2013, dictated the terms of the parties' co-ownership of Pasco Processing moving forward, and was in effect at the time of the events at issue. The Court recites the relevant contract terms of the OA that are germane to this order.

With respect to capital contributions, the OA provides at section 3.4:

> Except as otherwise provided herein, no Member may make any further Capital Contributions to the Company, and no Member shall be obligated to make any further Capital Contributions, unless all Members agree in writing on the terms upon, and the proportions in which, such Capital Contributions will be contributed.

ECF No. 72-1 at 11.

---

[2] A wholly owned subsidiary of Pasco Processing, Pasco Acquisition Corporation ("Pasco Acquisition"), acquired NFF Acquisition Corporation, which in turn was the holding company that owned NFF. ECF No. 63 at 61, 63.

Section 5.2 of the OA addresses "Limit [sic] on Manager's Authority" and provides, in part:

> Notwithstanding anything to the contrary, the Manager shall not have authority, without the written approval of the Board of Members, to take any action which is not provided for in Section 5.1 above, including without limitation, the following:
>
> . . .
>
> (l) setting any requirements for additional Capital Contributions that are not approved in the Annual Business Plan and/or agreed to by the Members and Board of Members in accordance with Article 3 above.

ECF No. 72-1 at 14.

Article 12 of the OA addresses "Miscellaneous" items and provides in Section 12.13 that "Deadlock"

> shall occur with respect to any matter for which a majority of the votes of the Board of Members is required for approval, and such matter is not approved as a result of a vote in which three (3) members of the Board of Members have voted against the matter and three (3) members of the Board of Members have voted in favor of the matter (a "Tie Vote") on a matter submitted to it at a meeting or in the form of a proposed written consent. If a Deadlock occurs, the Board of Members shall hold a meeting fifteen (15) days after such Deadlock to make a good faith effort to resolve the dispute and break the Deadlock. If the Deadlock is still not resolved, the Members agree to submit the matter to non-binding mediation by providing to Judicial Arbitration and Mediation Services ("JAMS") a written request for mediation. The Members will cooperate with JAMS, will participate in mediation in good faith and will share equally in its costs. In the event a Deadlock cannot be resolved under this Section 12.13 within forty-five (45) days after a Party provides a written request for mediation, the Members may exercise the option to purchase in accordance with Section 9.5 above or any available remedy under applicable law.

ECF No. 72-1 at 30.

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR FRCP 56(D) DISCOVERY AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

Pursuant to section 6.3 of the OA, each Member is entitled to appoint three representatives to sit on Pasco Processing's Board of Members. ECF No. 72-1 at 18. As of fall 2016, the Members had each appointed three Board representatives. ECF No. 53 at 2.

Section 6.11 of the OA authorizes the Board to act "without a meeting" through a written document, signed by all of the Board representatives, setting forth the action to be taken. ECF No. 72-1 at 20.

The option to purchase provision at section 9.5 of the OA provides:

**Members [sic] Option to Purchase on Deadlock.** In the event the Members cannot resolve a Deadlock in accordance with Section 12.13 below, Washington Potato shall have the option to purchase Simplot's Member Percentage Interest for the Agreement Price on the Agreement Terms. Washington Potato's option to purchase Simplot's Member Percentage Interest under this Section 9.5 shall be conditioned upon the Company, Washington Potato and Simplot entering into a supply agreement for a period of five (5) years for the supply of vegetable products to Simplot with terms and conditions mutually acceptable to Simplot and Washington Potato. In the event that Washington Potato does not exercise its option to purchase Simplot's Member Percentage Interest within seventy-five (75) days after a party provides a written request for mediation under Section 12.13 below, then Simplot shall have the option to purchase Washington Potato's Member Percentage Interest for the Agreement Price on the Agreement Terms.

ECF No. 72-1 at 25.

*Events at issue*

In approximately spring 2016, Simplot communicated that it wanted a business divorce from WPC. ECF No. 52-3 at 30. In late June 2016, Simplot offered to buy out WPC's membership interest in Pasco Processing, subject to refinancing NFF's and Pasco Processing's existing debt. ECF No. 65 at 8. In July 2016, WPC responded with an offer to buy out Simplot's membership interest in Pasco Processing. ECF No. 65 at 11.

In early August 2016, Simplot proposed a different transaction in which Simplot would acquire full ownership of NFF and other subsidiaries of Pasco Acquisition, and WPC would acquire full ownership of Pasco Processing. ECF No. 65 at 14. In late August 2016, Simplot provided forms for supply agreements to WPC that were acceptable to Simplot in the event that the Members settled on a purchase price of Simplot's interests in Pasco Processing. ECF Nos. 52-4 at 18; 53-2 at 2. However, no agreements were reached.

On September 29, 2016, Simplot notified WPC that it had engaged counsel to analyze Simplot's investments in Pasco Processing and Simplot's joint venture with OPC. ECF No. 65 at 16. The next day, in the midst of harvest season, which represents the busiest time in this industry, Simplot made a formal "records demand" of WPC for detailed financial and other business records of Pasco Processing going back three years, to be provided within fourteen days. ECF Nos.

54 at 3; 54-1 at 2.  The parties dispute the degree to which the records demand was satisfied.

### Call for capital contributions

In February 2013 Pasco Processing had received financing from lender Northwest Farm Credit Services ("Farm Credit").  *See* ECF No. 63 at 150.  On October 6, 2016, Farm Credit met with WPC to discuss how Pasco Processing was in default of their loan terms.  ECF No. 53-7 at 3.  Subsequent to that meeting, WPC arranged a Board meeting to vote on a capital contribution to Pasco Processing in the amount of between $1.5 million and $3 million from each Member.  ECF Nos. 54 at 32; 52-3 at 27.

WPC originally set October 29, 2016, for the Board meeting to discuss the capital contribution, but the meeting was rescheduled to October 28, 2016, a date that was mutually agreeable to Board representatives from both WPC and Simplot as of October 11, 2016.  ECF Nos. 52-4 at 16; 53-6 at 2–3.  However, approximately one week before the Board meeting, Simplot requested that the meeting be rescheduled for "either November or December" to allow Simplot to review information that it had requested from WPC.  ECF No. 65 at 20.  WPC responded that Farm Credit was expecting to hear the Members' plans to remedy the loan default situation by the end of October and that the Members needed "to push forward with the board meeting as originally agreed."  *Id.*

Simplot's three Board representatives did not attend the meeting on October 28, 2016, "on the advice of counsel." *Id*.; ECF 52-3 at 27. WPC's counsel transmitted the meeting minutes to Simplot's counsel, along with a joint written consent, signed by WPC's three Board representatives, authorizing Pasco Processing to receive a $6 million capital contribution, with $3 million contributed by each Member. ECF No. 54-4. The cover letter accompanying the minutes and consent notified Simplot that a failure to execute the consent by November 4, 2016, would result in a deadlock under section 12.13 of the OA. ECF No. 54-4 at 3.

On December 8, 2016, WPC gave Simplot notice of a Board meeting to occur on December 14, 2016. WPC's notice stated that the meeting's "purpose" was "to resolve the Deadlock (as defined in section 12.13 of [the OA]) over the proposed capital contribution described in the attached Joint Written Consent dated October 28, 2016, and to address other company business." ECF No. 53-9 at 2.

On December 23, 2016, WPC provided a "Notice of Deadlock and Request for Mediation," to both Simplot and JAMS. ECF No. 29-8 at 2. The notice asserted that the nature of the deadlock was based on the parties' failure to reach a consensus regarding WPC's capital contribution. *Id.* On December 28, 2016, JAMS responded with a list of four mediators and their availability within 45 days

of the notice.  ECF No. 29-9 at 2.  By January 11, 2017, JAMS informed WPC that Simplot decided not to participate in mediation.  ECF No. 29-10 at 2.

### *Purported exercise of option to purchase*

On February 8, 2017, 45 days after WPC's notice of deadlock and request for mediation, WPC notified Simplot in writing that it was exercising its option to purchase Simplot's interest under section 9.5 of the OA.  ECF No. 53-10 at 2–3.  The February 8 letter set a closing date of March 10, 2017, and returned the form supply agreement previously prepared by Simplot, asserting that the document would "provide the framework for the five-year Supply Agreement to be executed in connection with the closing of the purchase."  *Id.* at 2.

On March 10, 2017, WPC purported to close on its acquisition of Simplot's interest in Pasco Processing and considered itself sole owner of Pasco Processing.  ECF No. 52-3 at 47.  Simplot disputes that there was a buyout, and, on March 20, 2017, purported to remove WPC as manager of Pasco Processing.  ECF No. 52 at 47, 51.

### *Litigation*

On December 2, 2016, Simplot filed a derivative lawsuit in the U.S. District Court for the Western District of Washington seeking to replace WPC as manager of Pasco Processing and seeking appointment of a receiver for Pasco Processing.  On April 14, 2017, the U.S. District Court for the Western District of Washington

dismissed Simplot's complaint for lack of subject matter jurisdiction, rendering moot a number of Simplot's pending motions including a motion to compel and a motion for preliminary injunction. ECF Nos. 67 at 3; 68 at 9.

The same day that the U.S. District Court for the Western District of Washington dismissed Simplot's action, Simplot filed an action in King County Superior Court, again derivatively on behalf of Pasco Processing and a second joint venture between Simplot and OPC, pleading many of the same allegations as in their federal court complaint. *See* ECF No. 63 at 190. Mr. Tiegs, OPC, and WPC are the named defendants in the King County litigation. *Id*.

On March 14, 2017, WPC filed the present action, seeking a declaratory judgment that WPC lawfully exercised its rights to purchase Simplot's interest in Pasco Processing under the OA. ECF No. 1. Alternatively, WPC seeks specific performance of the OA. *Id*. Simplot filed counter-claims naming WPC and OPC as counter-defendants and seeking damages for breach of contract, a declaratory judgment, and injunctive relief for WPC's and OPC's alleged violations of Washington LLC statutes regarding recordkeeping. ECF No. 35.

## LEGAL STANDARDS

The Court considers Defendant's motion for judgment on the pleadings separately from Plaintiff's motion for partial summary judgment, as the motions require two different standards of review. *Cf. Fair Hous. Council v. Riverside*

*Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (requiring, in the context of cross-

motions for summary judgment, that the district court consider each party's motion

on an individual and separate basis). Judgment on the pleadings is proper when

"the moving party establishes on the face of the pleadings that there is no material

issue of fact and that the moving party is entitled to judgment as a matter of law."

*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*,

644 F.3d 934, 937 n. 1 (9th Cir. 2011). A motion for judgment on the pleadings

shall be treated as a motion for summary judgment if "matters outside the

pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d).

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a). A genuine dispute exists where "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it

"might affect the outcome of the suit under the governing law." *Id.* Factual

disputes that are irrelevant or unnecessary will not be counted." *Id.*

A district court determining a summary judgment motion views the evidence

in the light most favorable to the nonmoving party. *See, e.g., United States v. JP*

*Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir.

2016). A "'judge's function' at summary judgment is not 'to weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 249). "It is also clear that the court must not make any credibility determinations." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

## DISCUSSION

### *Discovery motion*

As a preliminary matter, the Court memorializes its oral ruling at the October 11, 2017, hearing denying Defendant's motion for discovery pursuant to Fed. R. Civ. P. Rule 56(d), ECF No. 67. Simplot argues the need for further discovery into issues related to management and operation of Pasco Processing in general, and discovery relating to Mr. Tiegs' credibility in particular. *See* ECF Nos. 67 and 68. The Court finds these side issues irrelevant to whether the terms in the four corners of the contract were violated. In addition, dispositive motions are not an appropriate vehicle for resolving questions of credibility, *see Zetwick*, 850 F.3d at 441, and the motions before the Court do not require the Court to engage in such fact-finding.

### *Defendant's evidentiary objections*

Defendant disputes the evidence that Plaintiff cites to support many of Plaintiff's statements of fact. *See* ECF No. 66. However, Defendant did not move

to strike the allegedly inadmissible material or argue its objections, but instead recited a litany of objections within Defendant's counter-statement of material facts. *See id.*

Many of Defendant's objections are based on Fed. R. Evid. Rule 1002 (the "best evidence rule"), requiring the production of an original writing, recording, or photograph to prove its contents. The Court does not find these objections well-founded. In many instances Fed. R. Civ. P. Rule 1003 would permit the admission of duplicates. In addition, in at least one instance, Defendant relies on the same document that Defendant argues violated the best evidence rule when Plaintiff cited it. *See* ECF No. 66 at 21, 32 (citing ECF No. 53-10).

Although Defendant states that some of Plaintiff's evidence does not satisfy Fed. R. Evid. 602, Defendant's alleged objections were conclusory and not developed by argument or specific references to the record. Therefore, the Court considers Defendant's statements as argument rather than objections.

The Court also notes Defendant's alleged objections under Fed. R. Evid. Rule 106 regarding the need to contemporaneously consider other documents in the record or the remainder of a document partially reproduced. The Court did consider the entire record relating to the motions in arriving at its findings and conclusions, making any objection on that point moot.

Finding no merit in Defendant's blanket objections, the Court overrules them to the extent that they can be considered objections rather than argument.

### Contract interpretation

The central issue of the motions is contract interpretation, and the parties agree that Washington law applies. *Compare* ECF No. 18 at 10 *with* ECF No. 28. Washington case law prescribes an "objective manifestation" approach to contract interpretation. *Hearst Commnc'ns Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 503 (2005). "Under this approach, [courts] attempt to determine the parties' intent by focusing on the objective manifestations of the agreement rather than on the unexpressed subjective intent of the parties." *Id.* Courts must construe all contract provisions together and give effect to each part. *Diamond B Constructors, Inc. v. Granite Falls Sch. Dist.*, 117 Wn. App 157, 165 (Wash. App. Div. 1 2003).

Simplot argues correctly that a Member cannot be compelled to approve a capital contribution solely under section 3.4 of the OA. However, section 5.2 of the OA explicitly establishes a role for the Board in approving capital contributions. Specifically, section 5.2(l) requires that the Board must give written approval or otherwise agree before a manager can set a requirement for additional capital contributions. ECF No. 72-1 at 14.

Section 12.13 of the OA establishes that "deadlock" can occur "with respect to any matter for which a majority of the votes of the Board of Members is

1    required for approval." ECF No. 72-1 at 30. Therefore, the Court finds that capital

2    contributions, which require Board of Members action, can precipitate a deadlock

3    under the OA. Having encountered a deadlock regarding capital contributions, it is

4    uncontested that WPC attempted to follow the dispute resolution procedures

5    outlined by section 12.13 of the OA, while Simplot refused to participate.

6          The Court is not persuaded by Simplot's argument that WPC's actions with

7    respect to the capital contributions were part of an elaborate effort to

8    "manufacture" a deadlock. *See* ECF No. 62 at 9. There is insufficient evidence to

9    raise a genuine issue of material fact regarding whether WPC sought to contribute

10   $3 million on the assumption that Simplot would not agree to make a contribution

11   itself or that WPC successfully conscripted Farm Credit to cooperate in an effort to

12   create a "sham" deadlock. Moreover, and more critically to the contract dispute at

13   issue, there is no distinction between a "real" and a "manufactured" or "artificial"

14   deadlock under this OA. *See* ECF No. 72-1 at 8, 30 ("deadlock" is exclusively

15   defined in section 12.13). The Court concludes that in this case if a conflict looks,

16   walks, and talks like a deadlock, it is a deadlock.

17         ***Prevention, waiver, and duty of good faith and fair dealing***

18         The plain language of section 9.5 of the OA requires the parties' agreement

19   for a "five-year supply of vegetable products to Simplot," as a condition precedent

20   to WPC's option to purchase Simplot's membership interest after deadlock. ECF

21

No. 72-1 at 25. The undisputed facts demonstrate that the parties did not enter into a five-year supply agreement. Therefore, the Court must determine whether an exception to enforcement of that condition precedent applies.

Parties to a contract have an implicit duty of good faith and fair dealing in their performance and enforcement of the contract's terms. *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112 (Wash. 2014) (observing that Washington law imposes upon contracting parties a duty of good faith and fair dealing in connection with the terms agreed to by the parties). Washington courts have determined that the duty of good faith requires "'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Edmonson v. Popchoi*, 172 Wn.2d 272, 280 (Wash. 2011) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205, cmts. a). "'Bad faith may be overt or may consist of inaction.'" *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205, cmts. d).

Neither the Washington Supreme Court nor the Ninth Circuit, applying Washington law, requires that a party intend to harm the other contracting party to breach a duty of good faith. *Nova Contr., Inc. v. City of Olympia*, 2017 Wash. App. LEXIS 913 *9 (Wash. Div. 2, April 18, 2017) (citing *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 909 (9th Cir. 2001); *Rekhter*, 180 Wn.2d at 113). "'Subterfuges and evasions violate the obligation of good faith in performance

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR FRCP 56(D) DISCOVERY AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

even though the actor believes his conduct to be justified.'" *Id.* (quoting

RESTATEMENT (SECOND) OF CONTRACTS § 205, cmts. d).

Specific to conditions precedent, "'[t]he implied covenant of good faith and fair dealing requires a promisor to reasonably facilitate the occurrence of a condition precedent by . . . refraining from conduct which would prevent or hinder the occurrence of the condition . . . .'" *Guidiville Rancheria of Cal. v. United States*, 2017 U.S. App. LEXIS 14394, *5, 2017 WL 3327828 (9th Cir., Aug. 4, 2017) (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 212 (2d Cir. 2002)).

In addition, the prevention doctrine dictates that a party who "interferes with a condition precedent in a way that the parties did not reasonably contemplate . . . 'cannot in any way take advantage of that failure [of the condition precedent].'" *Guidiville Rancheria of Cal.*, 2017 U.S. App. LEXIS 14394, *5 (quoting 13 *Williston on Contracts* §39.3 (4th ed.)) (brackets in original). The prevention doctrine has been recognized in Washington case law going back to the early twentieth century. *McDonald v. Wyant*, 167 Wash. 49, 55 (1932) ("It is a well recognized principle of law that one who prevents a thing may not avail himself of the nonperformance which he has occasioned."); *Blair v. Wilkeson Coal & Coke Co.*, 54 Wash. 334, 338 (1909) ("They performed the contract as far as they could,

and were only prevented from performing it in its entirety by the acts of the appellant.").

Simplot argues that material facts are in dispute as to whether Simplot frustrated WPC's performance of the "Option to Purchase" provision pursuant to section 9.5 of the OA, and that those material facts preclude the partial summary judgment that WPC seeks. However, Simplot's alleged disputed material facts center on Simplot's allegations of wrongdoing by Mr. Tiegs in managing Pasco Processing and in his role at NFF. Simplot fails to make clear why Mr. Tiegs' conduct is material, or even relevant, to the Court's interpretation of the OA in this declaratory action. Indeed, Simplot does not connect Mr. Tiegs' alleged actions to any particular contract term.

Moreover, the concepts underlying the prevention doctrine and its relationship to the duty of good faith address the stagnation and entrenchment that occurred here. The Court finds that the undisputed facts support the finding that Simplot frustrated WPC's ability to address a deadlock and exercise its purchase option under the OA.

Simplot's motion for judgment on the pleadings is premised on WPC's failure to allege facts in the complaint supporting that the five-year supply agreement condition was satisfied. With respect to WPC's partial summary judgment motion, Simplot argues that a question of fact persists as to whether the

five-year supply agreement, the condition precedent for WPC to acquire Simplot's interest in Pasco Processing, was waived or otherwise negated. However, there is no dispute that Simplot refused to negotiate the agreement. Nor is there a dispute that WPC gave notice more than one month before closing on the buyout to Simplot of WPC's willingness to use Simplot's form supply agreement as the framework for the five-year supply agreement required in section 9.5 of the OA. Simplot cannot create a material question of fact out of its own inaction. Similarly, Simplot cannot rely on the failure of the mediation occurring when the undisputed facts are that Simplot failed to participate in the scheduled mediation as required by the OA.

Simplot's allegations regarding WPC's role at Pasco Processing are immaterial to the present summary judgment motion. The OA does not include provisions requiring WPC to provide Simplot additional financial information before the participants on the Board of Members agree to a capital contribution. The OA also does not have a provision allowing Simplot to divert from the process explicitly laid out in the OA for attempting to resolve a deadlock. Simplot ignores the months of its own silence and inaction as WPC tried to resolve the deadlock as dictated by the OA.

Ultimately, both the motion for judgment on the pleadings and the partial summary judgment turn on whether the capital contribution issue resulted in a

deadlock under the OA.  The Court finds that a deadlock occurred and that WPC followed the terms of the OA to resolve the deadlock.  The Court further finds that Simplot's failure to send its representatives to the October 28, 2016, Board meeting to vote on the capital contribution; Simplot's failure to return the proposed written consent; and Simplot's failure to mediate the deadlock as required by section 12.13 of the OA, constitute prevention of the terms of the OA, or alternatively, breach of Simplot's duty to participate in good faith and fair dealing.

The Court also finds that Simplot's failure to negotiate a five-year supply agreement, or to ratify Simplot's previously proffered five-year supply agreement, constitute Simplot's prevention of the condition precedent, or alternatively, waiver of that condition precedent.  Therefore, the Court finds that WPC was entitled to exercise its option to purchase all of Simplot's interest in Pasco Processing under section 9.5 of the OA.

The Court finds that there are no genuine issues of material fact and that WPC is entitled to judgment as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Judgment on the Pleadings, **ECF No. 18**, and, Motion for Fed. R. Civ. P. 56(d) Discovery, **ECF No. 67**, are **DENIED**.

2. Plaintiff's Motion for Partial Summary Judgment, **ECF No. 50**, is **GRANTED**.

3. A declaratory judgment shall be entered in favor of Plaintiff that:

   a. WPC and Simplot reached a Deadlock regarding the necessity to make a capital contribution to Pasco Processing.

   b. Washington Potato is the one hundred percent (100%), sole owner of Pasco Processing, LLC after executing its rights on March 10, 2017, under Article 9 and Section 12.13 of the Amended and Restated Limited Liability Operating Agreement of Pasco Processing, LLC.

4. Plaintiff's claim for specific performance, pleaded in the alternative to Plaintiff's declaratory judgment claim, is **DISMISSED AS MOOT**.

The District Court Clerk is directed to enter this Order, enter judgment for Plaintiff, and provide copies to counsel.

**DATED** October 26, 2017.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge